342 P.2d 854

CLIMATE CONTROL, INC., a corporation, in the right and on behalf of The Industrial Commission of Arizona, and the policyholders of the said The Industrial Commission of Arizona, Appellant,

v.

B. F. HILL, F. A. Nathan and A. R. Kleindienst, individually and as Commissioners of said The Industrial Commission of Arizona; and The Industrial Commission of Arizona, et al., Appellees.

Nos. 6177, 6414.

Supreme Court of Arizona.

July 21, 1959.

182

John E. Madden, Phoenix, McCarty, Chandler & Udall, Tucson, Favour & Quail, Prescott, for appellant.

Shimmel, Hill & Cavanagh, Phoenix, for appellees B. F. Hill and F. A. Nathan, individually and as commissioners of The Industrial Commission of Arizona, and for appellee Fisher Contracting Co.

Jennings, Strouss, Salmon & Trask, Phoenix, for appellee A. R. Kleindienst individually and as a commissioner of The Industrial Commission of Arizona, and for appellee Salt River Valley Water Users' Ass'n.

John R. Franks, Phoenix, for appellee The Industrial Commission of Arizona.

Fennemore, Craig, Allen & McClennen, Phoenix, for appellees American Smelting and Refining Co., Kennecott Copper Corp., Mountain States Telephone and Telegraph Co., and The Pullman Co.

Edward W. Rice and G. H. Ladendorff, Globe, Attorneys for appellees Inspiration Consolidated Copper Co., Magma Copper Co., and International Smelting and Refining Co.

Kramer, Roche & Perry, Phoenix, for appellees Garrett Corp. and Palmer Mfg. Corp.

McQuatters & Stevenson, Flagstaff, for appellees Southwest Lumber Mills Co. and Saginaw & Manistee Lumber Co.

Evans, Kitchel & Jenckes, Phoenix, for appellees Apache Powder Co., Phelps Dodge Corporation, Darr Aero Tech, Inc., Verde Tunnel and Smelter Railroad Co., Phelps Dodge Mercantile Co., and Upper Verde Public Utilities Co.

Morris & Malott, Globe, for appellees Miami Copper Co., Castle Dome Copper Co., Inc., and Copper Cities Mining Co.

Snell & Wilmer, Phoenix, for appellees Reynolds Metals Co., Allison Steel Mfg. Co., and the Arizona Power Co.

Ryley, Carlock & Ralston, Phoenix, for appellee Standard Oil Co. of California.

Gust, Rosenfeld, Divelbess & Robinette, Phoenix, for Western Union Tel. Co.

Guynn, Twitty & Sievwright, Phoenix, for appellees San Manuel Copper Corp., Shattuck Denn Mining Corp., The Stearns Roger Mfg. Co., Utah Const. Co., St. Anthony Mining & Development Co., Ltd., United States Smelting, Refining and Mining Co., and the Eagle-Picher Co.

STRUCKMEYER, Justice.

This consolidated appeal has as its primary objective the testing of the lawfulness of certain premium rates fixed by The Industrial Commission of Arizona for a class of policyholders hereinafter referred to as "self-raters." Appellant, in its complaint in the court below, Cause No. 6177, stated three claims for relief. All claims were dismissed in response to motions by appellees. Thereupon, appellant appeared before the Commission, asserting that the order establishing the rates for premiums for the self-raters was unreasonable and unlawful. From an adverse decision there, appellant filed a second complaint in the court below, Cause No. 6414, stating four claims for relief. Of these, all were dismissed as against the individual defendants Industrial Commissioners and former Industrial Commissioners. As to the corporate defendants, three of appellant's claims were dismissed, and part of the fourth. That part of the fourth which attacked the order of the Commission as unreasonable was not dismissed, it being the opinion of the lower court that a claim for relief was stated to review the administrative action of the Commission. These appeals question the correctness of the orders dismissing the claims in both actions.

The Workmen's Compensation Law of this state requires an employer to insure his employees in one of three ways: (1) by insuring in the state compensation fund; (2) by insuring with a private corporation, or (3) by qualifying as a self-insurer. Subsection A, A.R.S. § 23–961. The corporate appellees named in appellant's complaint are employers in the first class; that is, they insure in the state compensation fund. However, they insure in a special category as self-raters, pursuant to the authority of subsection E, A.R.S. § 23–983, infra. Self-rating is the modification of premium dependent upon actual loss experience.

Appellant is one of some thirteen thousand policyholders insured by the Commission under the Workmen's Compensation Act, called "general-class policyholders" as distinguished from the thirty-odd appellee "self raters." The Commission fixes rates of premium for the coverage afforded in the compensation fund for all policyholders.

The rates fixed are: A rate for primary losses; that is, losses up to a specified amount per accident (the catastrophe limit), and a rate for basic costs; that is, the rate for expenses of administration and for the creation and maintenance of specified reserves.

## Claim On Basic Costs

The Arizona Workmen's Compensation Law was originally enacted in 1925. At that time, The Industrial Commission adopted a self-rating plan which was subsequently held by this court to be ultra vires for lack of legislative authority. Industrial Commission v. Arizona Power Co., 37 Ariz. 425, 295 P. 305. Two years later, in 1933, the legislature, undoubtedly in response to the holding in the Arizona Power Company case, adopted an amendment to the Workmen's Compensation Law, empowering the Commission to write contracts of insurance embodying a self-rating plan. This amendment, now subsection E, A.R.S. § 23–933, hereinafter called the self-rating statute, provides:

> "The commission may in its discretion endorse on any of its regularly issued policies a self-rating plan, and and may apply tentative rates, subject to modification in accordance with the loss experience of such risks, and shall provide for a carrying charge, premium tax and a rate for creation of a catastrophe reserve and reserves to meet an-

ticipated and unexpected losses to be fixed by the commission."

We have arrived at certain conclusions concerning the self-rating statute. *First,* and obviously, it authorizes the Commission to endorse on its policies of insurance a self-rating plan and permits tentative rates of premium to be modified in accordance with the loss experience of the assured. This does not mean that the endorsement is the self-rating plan. The self-rating plan is the modification of rates of premium in accordance with loss experience. The endorsement is merely the vehicle by which the Commission evidences its intention to be bound to the self-rating plan. It is the authority by which an assured may compel the Commission to compute premiums in accordance with the plan. *Second,* the language of the statute neither requires nor prohibits the Commission from modifying the rate of premium for basic costs upward or downward in accordance with loss experience. It is entirely discretionary as to whether any modification is to occur. Although carrying charges, etc., "shall be provided for," this is not to say that these items of basic costs are excluded from modification in accordance with loss experience. The Commission is simply directed to provide for the specified items in fixing a rate of premium. *Third,* no attempt has been made by the legislature to control the manner or provide a formula

by which tentative rates must be modified except only that the modification be in accordance with loss experience. Such modification may be on a 100 per cent or lesser basis as long as it has some relationship to loss experience.

■ The policy of insurance issued by the Commission is, of course, the contract between the Commission and the assured. It provides that the Commission is directly and primarily liable to the employees of the assured (or in the case of an employee's death, to his dependents) to pay the compensation and accident benefits established by the Workmen's Compensation Law. While the policy is specifically conditioned upon payment of premiums by the employer, there is nothing contained within it by which the amount of the premium can be ascertained or calculated. There is, however, this clause:

"Experience And Hazard Rating: Unless otherwise specified by endorsement hereon, the employer agrees to accept and abide by any experience rating plan and/or hazard rating schedule adopted and published by The Industrial Commission of Arizona; and the employer agrees to accept any increase or reduction in the rate or rates required by the application of such experience rating plan and/or hazard rating schedule and further agrees that the effective date of such changes shall

be fixed by The Industrial Commission of Arizona."

By the foregoing clause, the employer is bound to the rates of premium to be determined from the two documents, the "Experience Rating Plan" and the "Hazard Rating Schedule" and at least in so far as the contract is concerned, the Commission may compute the premium from either or both, in its discretion. The discretion of the Commission in determining to be bound solely by the rating plan is evidenced by issuing its endorsement in compliance with the self-rating statute. It should be stressed that under the express terms of the policy, independent of any endorsement, the assured is committed to the payment of rates of premium predicated on the two methods provided therein, but the Commission can only be compelled to charge the rates of premium in accordance with the self-rating plan if it binds itself by endorsement.

■ The endorsement which the Commission issued pursuant to the authority of the self-rating statute in its material part reads:

"Except as regards the loading for expense of administration and for catastrophe and excess losses, the rate or rates of premium for this policy shall be subject to the experience rating plan of The Industrial Commission of

Arizona on a 100 percent self-rating basis, i. e., the rate or rates shall be modified upward or downward in direct proportion to the ratio of actual loss experience (exclusive of catastrophe and excess losses) to the expected loss experience (exclusive of catastrophe and excess losses)."

It is appellant's position that the language of the endorsement clearly and unambiguously subjects the rates of premium for the policy to the rating plan of the Commission except the rate of premium for basic costs. It is argued, in effect, that the rate of premium for basic costs is excepted from the experience rating plan of the Commission and hence must be computed from the rate or rates of the regularly issued policy —presumably from the hazard rating schedule. We cannot agree with appellant's conclusions for several reasons.

*First,* as has been pointed out, the policy is the contract between the parties. By the express provision thereof, the employer has agreed to abide by the experience rating plan and/or hazard rating schedule, but the Commission has not agreed to compute rates of premium in accordance with either. If the Commission's obligations under the contract are to be changed, then it must be because of the promises contained within the endorsement.

Clearly, the Commission, by the endorsement, has promised to compute the rates of premium subject to the experience rating plan on a 100 per cent self-rating basis. The question then becomes, what else, if anything, has the Commission promised? An examination of the exception discloses that it, itself, is not a promise by the Commission and hence no promise can be implied therefrom. Stated another way, by the endorsement the Commission has agreed to a modification of the rates of premium on a 100 per cent basis as established in the rating plan, and the exclusion by the exception is no more than a statement that the Commission does not bind itself to charge a rate of premium for basic costs subject to modification on a 100 per cent basis. Clearly, the Commission has not promised how the rates of premium for basic costs shall be computed. Therefore, the exception is simply an exclusion of basic costs from the promise of the Commission to compute all rates of premium subject to the rating plan on a 100 per cent basis. In this sense, the exception in the endorsement is not a true exclusionary clause as is commonly found in insurance policies. The excepted items of basic costs are not excluded from the operation of the policy or the coverage thereof. They are excluded from the operation of the Commission's promise as to how rates of premium shall be computed.

A simple illustration will point out the significance of the language used. Assume that A is hired by B to work by the week.

If B promises that the hours of labor shall be from 9 to 5 except as regards Saturdays and Sundays, it cannot be concluded that this promise means that A is not to work for B on Saturdays and Sundays. Similarly, the assured, by the express terms of the policy, has agreed to be bound to a computation of premiums, *all the premiums,* in accordance with the experience rating plan. The Commission, by agreeing that the rate of premium for primary losses shall be modified on a 100 per cent self-rating basis subject to [the formula in] the self-rating plan, has not agreed or promised anything at all regarding the computation of the rates of premium for basic costs. The assured is still liable under its promise to abide by the rating plan, and the Commission is at liberty in its discretion to charge in conformity therewith. Accordingly, we conclude that the self-rating endorsement does not prohibit the computation of premium for basic costs in accordance with the self-rating plan.

*Second,* the conclusions stated are sufficient to dispose of appellant's contention concerning basic costs. However, if we assume that the exception can be construed as a promise regarding the computation of the rate of premium for basic costs, we are led ultimately to the same conclusion.

From the statement of appellant's claim, it can be understood that its case is predicated primarily on the specific language of the endorsement. Nevertheless, appellant's construction is not necessarily the only meaning which can be ascribed thereto. The endorsement is also susceptible of the interpretation that the rates of premium for the policy shall be subject to the rating plan on a 100 per cent self-rating basis except for basic costs which shall be subject to the rating plan, but not on a 100 per cent self-rating basis.

A simple hypothetical example will serve to clarify the problem here presented. Assume this statement:

"Except as regards the 29th Division, the units shall be subject to the attack plan of the Eighth Army on a 24-hour alert basis."

Like the self-rating endorsement, the sentence, standing alone, is susceptible of either of two possible interpretations: one, that the 29th Division is not subject to the attack plan of the Eighth Army; or two, that the 29th Division is subject to the attack plan of the Eighth Army, but not on a 24-hour alert basis. Because of the structure of the sentence, it is impossible to draw any certain conclusion from the language used. Similarly, it is impossible to draw any certain conclusion from the endorsement.

In the case of the assumed statement, to determine its meaning an additional fact must be known. That fact is whether the 29th Division is a part of the attack plan. If it is, the 29th Division must be said to

be excluded only from the operation of the 24-hour alert. Similarly, the endorsement must take its meaning from the answer to the question of whether the rate of premium for basic costs is comprehended within the rating plan. If the rating plan does not include basic costs, then they are not brought into it by the language of the endorsement; but if basic costs are part of, and included within, the rating plan, then the exception simply excludes the rates of premium therefor from computation on a 100 per cent self-rating basis.

Appellant argues that the endorsement is plain and unambiguous and that it is not necessary, or even proper, to construe it by reference to the self-rating plan. As we have pointed out, it is impossible to draw any certain conclusion, simply because there is not sufficient literal significance contained therein to ascribe absolute meaning to it. The question here is not one of fact, but one of law, and we see no reason to refer the case back to the lower court simply for the introduction into evidence of the experience rating plan referred to in the policy. A judicial interpretation of a contract does not reach a point where the meaning of some clause can be said to be in doubt upon merely arriving at a conclusion that such clause may, as an abstract proposition, be given either of two meanings. A clause in a contract, if taken by itself, often admits of two meanings, when from the whole contract there is no reasonable doubt as to the sense in which the parties use it.

We are not compelled to interpret the endorsement independent of the self-rating plan. Matters contained in other writings which are referred to are to be regarded as part of the contract and properly to be considered in the interpretation of the contract. Day v. United States, 245 U.S. 159, 38 S.Ct. 57, 62 L.Ed. 219. We said in Industrial Commission v. Arizona Power Co., supra, that it has long been settled, without a dissenting voice, that parties may incorporate into agreements by mere reference, other writings or agreements or records, and thereby make the latter an essential part of the contract.

At this point, appellant argues that there was before the lower court, and is before this court, no evidence of the Commission's self-rating plan; hence the plan cannot be consulted as an aid to understanding the endorsement. In effect, appellant is arguing that the lower court was compelled to determine whether a claim for relief was stated from an examination of the complaint only. We have previously held that judicial notice may be taken of the regulations of administrative bodies. For example, we have held that this court would take judicial notice of the Civil Air Regulations. Brandes v. Mitterling, 67 Ariz. 349, 196 P.2d 464. While there is authority to the contrary, there is also au-

thority that judicial notice may be taken of the actions of industrial commissions which implement workmen's compensation laws. Frank C. Sparks Co. v. Huber Baking Co., 48 Del. 9, 96 A.2d 456; Daoud v. Matz, Fla., 73 So.2d 51; Kramer v. Charlevoix Beach Hotel, 342 Mich. 715, 71 N.W.2d 226.

It is provided by the self-rating plan in its most material parts:

Paragraph I.

"Every employer who shall insure his liability, or any part of the same, under the Workmen's Compensation Law by obtaining from The Industrial Commission of Arizona a policy of insurance, bearing an endorsement providing that the rate or rates of premium for such policy, exclusive of the loading for expense of administration and for catastrophe and excess losses, shall be modified upward or downward in direct proportion to the ratio of the actual loss experience (exclusive of catastrophe and excess losses) to the expected loss experience (exclusive of catastrophe and excess losses), is an employer insuring with the Commission on a self-rating basis."

Paragraph II.

"Every employer insuring with the Commission on a self-rating basis shall receive a policy to which the Commission will assign a rate or rates of premium which shall be known as initial rates. Such rate or rates shall apply to the initial experience period, subject to retroactive modification in accordance with the experience of the insured developed during such initial experience period."

Paragraph XI as amended:

*"Twenty-three percent (23%) of every rate shall be considered the loading for the expense of administration and for catastrophe and excess losses."* (Emphasis supplied.)

Paragraph XII as amended:

"Seventy seven (77%) percent of the premium developed by the application of the initial rate or rates to the payroll shall be considered the expected loss experience of the assured exclusive of the catastrophe and excess losses."

Paragraph XV as amended:

"Upon the determination of the actual loss experience, the initial rate or rates shall be modified upward, if the quotient of the ratio of the actual loss experience, exclusive of catastrophe and excess losses, to the expected loss experience, exclusive of catastrophe and excess losses, is greater than 1.0; and downward if the quotient is less than 1.0. The modification of the initial rate shall be computed by multiplying 77% of the initial rate by the quotient of such ratio. The resulting

figure represents 77% of the ultimate rate, to which the 23% loading *is added to give the actual ultimate rate* applicable to the payroll of the employer during the experience period." (Emphasis supplied)

The contents of the self-rating plan itself conclusively refute appellant's construction of the endorsement, for it is specifically provided therein that 23% of every rate "shall be considered the loading for the expense of administration and for catastrophe and excess losses," and "is added to give the actual ultimate rate."

It is therefore a fact that the rate of premium for basic costs is included within the operation of the self-rating plan. If the endorsement were construed to exclude or to except basic costs from the operation thereof, all of the quoted language of paragraphs XI, XII, and XV, supra, would be rendered meaningless, and the entire rating plan, as a practical reality, would be destroyed. This is for the obvious reason that if the rate of premium for basic costs is not to be determined from the rating plan, all references therein serve no useful purpose whatsoever.

The obvious purpose of the exception is to prevent any possibility that the Commission will be compelled to modify the rate of premium for basic costs in direct proportion to the ratio of actual losses, and for good reasons. It is wholly impractical to determine the exact costs of administering the Workmen's Compensation Act for each assured. In the case of anticipated and unexpected losses, the loss is not apparent and determinable for some time—possibly years after the rating period. If the premium for catastrophe losses were computed in direct proportion to the ratio of actual loss experience, the loss might be of such magnitude as to render an employer insolvent and, in effect, be the same as no insurance at all.

Appellant has presented to this court by way of an appendix, an extended analysis as to why the rate of premium for basic costs can be computed from an examination of the rating plan but only in accordance with what it terms the rates of the regularly issued policy. We are not impressed with the argument contained in the appendix. While the argument is consistent with appellant's ultimate conclusion that the rate of premium for basic costs must be computed from the regularly issued policy, it completely contradicts appellant's basic premise that the endorsement does not subject the rate of premium for basic costs to the self-rating plan.

Either the endorsement does or it does not subject the rate of premium for basic costs to the rating plan. If the rating plan requires the self-raters to pay a rate of premium for basic costs regardless of loss experience, the plan does comprehend a formula by which the rate of premium for basic costs may be computed, and it does

subject the rate to the plan. Appellant's argument concerning the effect of the rating plan on the computation of the rate of premium for basic costs in and of itself disproves its initial and basic contention that the rate thereof is not subject to the plan.

Irrespective of the foregoing, appellant's interpretation of the self-rating plan is manifestly without merit. The extended analysis of the plan need not be examined in detail, since its interpretation is predicated on the meaning of paragraph I thereof, supra. Every other argument is merely appellant's conclusions regarding how the plan is consistent with its interpretation of paragraph I.

Appellant states that "its introductory scope of coverage * * * reiterates that * * * the plan is not applicable to the rate of premium for basic costs." What appellant means by this statement is not clear since it is later concluded that the 23% referred to in paragraphs XI and XV means 23% of the rate or rates of the regularly issued policy; but it is certain that the paragraph does not purport to delineate the coverage of the self-rating plan:

> "Every employer * * * bearing an endorsement providing that the rate or rates of premium * * * is an employer insuring * * * on a self-rating basis."

Patently, the sole and only purpose is to identify those who are self-raters.

## Premium Tax Claim

Appellant further alleged in its complaint that the Commission had a mandatory duty to collect a statutory premium tax from the self-raters, which it failed to observe. Appellant relies on the concluding clause of the self-rating statute, supra, which states that the Commission "shall provide for a carrying charge, *premium tax* and a rate for the creation of a catastrophe reserve and reserves to meet anticipated and unexpected losses." Here again we cannot agree with appellant. If the legislature intended to delegate to the Commission the right to impose a tax, then the statute would clearly be unconstitutional as a delegation of legislative power. Art. III and Art. IX, § 1, Constitution of Arizona, A.R.S. See also Switzer v. City of Phoenix, 86 Ariz. 121, 341 P.2d 427.

The effect of appellant's argument is that in order not to make the words "premium tax" nugatory, we must not look alone to the self-rating statute to determine its meaning, but to other provisions of the Act. Appellant points in particular to paragraph 3 of subsection A, A.R.S. § 23–961. This latter section imposes a tax upon employers who are self-insurers in this language:

> "The employer shall pay a tax of two per cent of the premiums which would be paid by the employer if insured in the state fund. The tax shall not be less than two hundred fifty dollars per annum to be computed and collected by the commission and

paid into the expense reserve of the compensation fund."

It is argued that the legislature could only have intended that the premium tax imposed by the self-rating statute be the same tax referred to in paragraph 3, subsection A, A.R.S. § 23–961.

We do not agree with appellant's assumption as to legislative intent. There is no reason to believe that the legislature intended to impose on the self-rater the same tax as upon the self-insurer. The purpose of the tax in lieu of premiums imposed on self-insurers is to equalize the burden of the expenses of the Commission in administering the Workmen's Compensation Law. This is not true in the case of the self-raters. The language of the self-rating statute requires the Commission to provide for a "carrying charge." Such carrying charge necessarily includes a loading for expenses of administration. Thus, while appellant's argument has superficially an element of plausibility, there is no possible way to conclude with certainty that this was the legislative intent simply because what is sought to be imposed by the one is not the same as that imposed by the other.

■ The prime requisite of any statute is certainty. This applies with equal force to a taxing statute. The act which imposes a tax must be certain, clear, and unambiguous. Duhame v. State Tax Commission, 65 Ariz. 268, 179 P.2d 252, 171 A.L.R. 684.

Since it is impossible to relate the words "premium tax" with certainty to any portion of the Workmen's Compensation Act, we are compelled to hold that the language thereof is an unconstitutional attempt to delegate to the Commission the right to impose a tax, and as such is void.

Employers Liability Act Coverage Claim

■ In addition to Workmen's Compensation coverage, the policy in question also provides coverage for liability imposed by the Employers Liability Law of this state. Protection is afforded to the extent of $10,000/$20,000 limits. The regularly issued policy provides:

"* * * (Additional Employers Liability Insurance * * * may be procured by endorsement hereon and payment of premium therefor)."

The self-raters' policies contain an endorsement which deletes these limits, thereby affording to the self-raters unlimited protection.

It is appellant's position that although the contract requires increased premiums in return for such increased coverage, the self-raters receive this additional coverage without being required to pay additional premiums. Appellant argues that by its rules and regulations, the Industrial Commission has established the requisite rates and has published them in a certain table which appellant has included within its complaint. Ap-

pellant asks that the self-rater be compelled to pay the rate commensurate with the increased coverage which they have been afforded.

This, however, is clearly impossible. The table upon which appellant relies only includes the rates applicable to policies with liability limits from $10,000/$20,000 and up to $300,000/$500,000. Such rates are clearly inapplicable to the self-raters' contracts which contain no liability limits whatsoever. Even if the court had the statistical acumen to do so, it has no power to extend the table to encompass rates not included therein. The province of the court is not to set rates, but to review them. The motion to dismiss in relation to appellant's Employers Liability Act coverage claim was properly granted.

We note that in addition to the matters herein discussed, appellees urge that there are certain procedural errors which of themselves would be fatal to appellant's case. Although we agree in part, our conclusions above set forth are dispositive of the issues on the merits and render any further discussion unnecessary.

Judgment affirmed.

PHELPS, C. J., and JOHNSON, J., and E. R. THURMAN and FRED J. HYDER, Superior Court Judges, concur.

UDALL and BERNSTEIN, JJ., having disqualified, the Honorable E. R. THUR-MAN and FRED J. HYDER, Judges of the Superior Court, were called to sit in their stead and participated in the determination of this appeal.