438 P.2d 323

**The INDUSTRIAL COMMISSION of Arizona, Appellant,**

v.

**HARBOR INSURANCE COMPANY, Appellee.**

**No. 1 CA–CIV 187.**

Court of Appeals of Arizona.

March 11, 1968.

Rehearing Denied April 3, 1968.

Review Granted May 7, 1968.

Robert K. Park, Chief Counsel, by Arthur B. Parsons, Phoenix, for appellant.

Shimmel, Hill, Kleindienst & Bishop, by Rouland W. Hill, Phoenix, for appellee Harbor Insurance Co.

Jennings, Strouss, Salmon & Trask, by Riney B. Salmon and Rex E. Lee, Phoenix, amicus curiae, Continental Casualty Co.

MELVYN T. SHELLEY, Judge of the Superior Court.

The Industrial Commission of Arizona, hereinafter called appellant, on the 18th day of July, 1963, by General Order, set rates for the Industrial Commission, effective as of July 1, 1963, which were 11¼0% lower than those rates that the Industrial Commission on the same date set for workmen's compensation insurance carriers. Harbor Insurance Company, a corporation, hereinafter called appellee, after its motion for rehearing was denied, appealed to the Superior Court of Maricopa County. The Maricopa County Superior

Court granted a motion for summary judgment in favor of appellee, holding that the Industrial Commission of Arizona did not have the right to set two different rates, one for the Industrial Commission and another for private carriers.

This matter was thereafter appealed to this Court. For a procedural history of this case see Industrial Commission v. Harbor Insurance Company, 4 Ariz.App. 405, 420 P.2d 977 and Industrial Commission v. Harbor Insurance Company, 101 Ariz. 578, 422 P.2d 694. The issue here is whether the Industrial Commission has the legal authority to set two different rates of premium compensation insurance, one for the State fund and a different one for private carriers; and if so, did the legislature set sufficient standards therefor so as not to constitute an unlawful delegation of legislative authority.

The statutes involved are §§ 23–922, 23–961, subsec. B and 23–983 A.R.S. Appellee contends that Sections 23–922 and 23–961, subsec. B empower the Commission to fix rates both for the Commission and private carriers in accordance with the policies and standards set forth in Section 23–983 and therefore the rates must be uniform and the same.

Appellant contends:

1. The language "corporations * * transacting the business of workmen's compensation insurance in the state shall be subject to the rules and regulations of the commission, including rates to be charged, policy forms to be used and * * *"

in Section 23–961, subsec. B, A.R.S., standing alone is a proper delegation of the legislative rate-making power to the Industrial Commission, because impliedly such rates must be reasonable and when so read the requisite standard or policy is met.

2. "Reasonable" as used in Sections 23–945 and 23–946 A.R.S. (prescribing for and the method of review or orders of the Commission) *must be read with Section 23–961, subsec. B* and as so

read a sufficient standard of policy is provided.

3. The provision for hearing and review of Commission orders prescribed by Sections 23–945 and 23–946 A.R.S. constitutes sufficient safeguards against abuse of the delegated legislative power as to make Section 23–961 A.R.S. valid in the absence of proper standards and policies.

We find that the sections of our act that are involved were copied, in large part, from the Utah statutes. Section 23–961, subsec. B was taken from Section 53, Subdivision (3), of the Utah act, while Section 23–983 was taken from Section 37 of the Utah act. Prior to the amendment of the Utah statute and when it was substantially the same as ours, the Utah Supreme Court had before it the case of Scranton Leasing Company v. Industrial Commission, 51 Utah 368, 170 P. 976 (1918). In that case an employer had insured his compensation risk with a private carrier at a $5.00 rate. The rate prescribed by the Commission for the fund was $5.59. The Commission refused to approve the policy because the rate was less than that fixed by the Commission, and a writ of mandamus to compel the Commission's approval of the policy was asked for. The private carrier contended that the Commission had no authority to set rates.

While it is true that part of the opinion is dicta, nevertheless the dicta has convincing logic. In the SCRANTON case, after referring to the sections of the Utah act which were adopted by our legislature and now appear as Sections 23–961, subsec. B and 23–983 A.R.S., the court said:

"The question arises, when the Industrial Commission fixes the premium or rate for state insurance, as provided in the section just quoted, does not that ipso facto become the established rate for all the insurers doing business under the act? Does not that become the rule, the regulation in respect to the rate to be charged by stock corporations and mutual associations, as well as the state? The

logic of the whole subject-matter seems to support the affirmative view of the question. In fixing the rate for state insurance, as the law provides, the commission, after determining the hazards of the different classes, and other matters referred to in the section quoted, must then fix the premium at the lowest possible rate consistent with the maintenance of a solvent state insurance fund and the creation of a surplus and reserve. In any given case, unless the reasonableness of the rate is challenged, it must be presumed to be the lowest possible rate the business will safely permit. If in such case the commission accepts and approves a policy of a stock corporation or mutual association providing for a lower rate, the very act would be an impeachment of its own judgment, or be a confession at least that the corporation or association referred to can carry the insurance at a lower rate than the state is able to do. On the other hand, if the commission should approve and accept a policy from one of these corporations or associations at a higher rate than the commission has fixed for insurance by the state, would it not be permitting an imposition upon the public, an imposition which the industrial commission has the power to prevent? These considerations which reveal the absurdity and inconsistency of any other view lead us to believe that the intention of the Legislature must have been that, *when the Industrial Commission establishes a rate for state insurance, as provided by the law, the rate so established becomes the rate to which other insurers must conform. In our opinion, that is what is meant by the language 'shall be subject to the rules and regulations of the commission with respect to the rates to be charged.'*

"There is still another consideration which leads to the inevitable conclusion that the rate must be the same, both for the state and other insurers. In (sic) must be admitted that, whatever may be the power of the Industrial Commission to fix the rate, even for the state itself, still the rate when fixed is the subject of judicial inquiry as to its reasonableness or unreasonableness, and in a proceeding, brought for that purpose all the data material to such inquiry may be considered. Now, if the commission has fixed one rate for the state and another for other insurers for the same class of risk, how can it be contended that both rates are reasonable? If one is reasonable, the other must be too high or too low, unless we are permitted to inquire into the relative ability of the state and other insurers to carry the insurance and discriminate in favor of one as against the other according to its ability. Such a consideration is not only untenable, but indefensible on any theory of equal opportunity and square dealing.

"Upon first blush it may be considered that we are diverging from the question as to whether the law gives the commission power to fix the rate of insurance for insurers other than the state. But we are not diverging from that question at all. We have shown that Section 37 of the act in the most positive terms gives the commission power to fix the rate for the state. Now, if the rate for all other insurers must be the same, it follows as a logical sequence, incontrovertible, that the law gives the commission power likewise to fix the rate for other insurers." (Emphasis ours) 170 P. 976, 979–980..

Two years after the foregoing decision the Utah legislature amended the statute from which Section 23–983 A.R.S. was taken to specifically provide in their Section 3114 that "* * * *Such rates need not be uniform with the rates fixed for the State insurance fund.*" (Emphasis supplied) Senate Bill 117, Chapter 64, Utah Session Laws of 1923. Said amendment still remains a part of the Utah law and has been since May 8, 1923.

Our law existing today was originally passed in 1925. It is the opinion of this

Court that the Arizona legislature in looking over the Utah act in 1925 well knew of the aforementioned amendment and of the Scranton Leasing case. Nevertheless, the Arizona legislature elected to follow the old Utah statute thereby making state and private carrier rates the same and uniform under the same rules and regulations.

It would certainly be anomalous to say the legislature set specific standards in Section 23–983 A.R.S. for the Industrial Commission to follow in setting its own rates and then set up no specific standards for the Industrial Commission to follow in setting up private carrier rates other than the general statute that the Commission orders must be reasonable. Yet, if appellant Commission's contentions were accepted, this would be the result, because 23–961, subsec. B, A.R.S. merely provides that private carriers "shall be subject to the rules and regulations of the Commission, including rates to be charged, * *".

It is further the opinion of this Court that the wording of Section 23–961, subsec. B must be read together with 23–983 A.R.S. and when so read together, leave only one conclusion possible and that is that the Commission, although it has power to set rates for private carriers, does not have power to set different rates for itself than for those set for private carriers. This is especially true in view of the history of the Utah act at the time of the adoption of the Arizona law.

Having arrived at this conclusion, it is unnecessary to determine the other question involved in the appeal, to-wit, the sufficiency of standards for the Commission to follow if it had power to set different rates.

The decision of the lower court is affirmed.

CAMERON, C. J., and STEVENS, J., concur.

NOTE: Judge FRANCIS J. DCNOFRIO having requested that he be relieved from consideration of this matter, Judge MELVYN T. SHELLEY was called to sit in his stead and participate in the determination of this decision.