449 P.2d 1

The INDUSTRIAL COMMISSION of
Arizona, Appellant,

v.

HARBOR INSURANCE COMPANY,
Appellee.

No. 9283–PR.

Supreme Court of Arizona.

In Banc.

Dec. 30, 1968.

**74**

Robert K. Park, Chief Counsel, by Arthur B. Parsons, Jr., Phoenix, for appellant.

Shimmel, Hill, Kleindienst & Bishop, by Rouland W. Hill, Phoenix, for appellee.

Jennings, Strouss, Salmon & Trask, by Riney B. Salmon and Rex E. Lee, Phoenix, for amicus curiae, Continental Casualty Co.

LOCKWOOD, Justice:

On July 18, 1963, the Industrial Commission of Arizona promulgated an order, a portion of which revised premium rates for workmen's compensation insurance. As set forth in this order the rates to be charged by private insurance carriers were 11.1% in excess of those prescribed for the state compensation insurance fund. Harbor Insurance Company, a private workmen's compensation insurance carrier in Arizona, petitioned the Industrial Commission to vacate that portion of the above-mentioned order which set up the rate differential. On June 19, 1964, the Industrial Commission denied this petition. Five days later Harbor brought suit in the Superior Court to have the Commission's order declared unlawful, and was granted summary judgment. This judgment was affirmed by the Court of Appeals, Division One, Industrial Commission v. Harbor Insurance Co., 7 Ariz.App. 254, 438 P.2d 323 (1968), and we granted a petition to review their decision. Decision of the Court of Appeals is vacated.

■ At the outset, we note that the statutes relating to the Industrial Commission have been significantly modified by the 28th Arizona Legislature (Ch. 6, Laws 1968, 4 S.S.) subsequent to our acceptance of the petition for review. Although Harbor urges that such changes (to take effect January 1, 1969) have rendered moot the issue of the Commission's power to set unequal rates, we cannot agree. Pursuant to the summary judgment in favor of Harbor, an order staying the Industrial Commission's order of July 18, 1963, was entered by the lower court on April 14, 1965. Since that date Harbor has paid its premiums tax on a lesser premium basis than the other private workmen's compensation insurance carriers in Arizona. Therefore, even if this case were decided after the new law goes into effect, the Commission would still have a direct monetary interest in the outcome, in terms of unpaid premium taxes.

■ Proceeding to the merits of the case we must determine whether the statutes, as they existed in 1963, gave the Industrial Commission the power to set rates for private insurance carriers higher than those prescribed for the state compensation fund.

The statutes bearing on this controversy are A.R.S. §§ 23–961, subd. B and 23–983. The former provides for regulation of workmen's compensation insurance by the Industrial Commission and states in pertinent part: "Corporations or associations transacting the business of workmen's compensation insurance in the state shall be subject to the rules and regulations of the commission, *including rates to be charged,* * * *." (Emphasis added.) It is conceded that this statute gives the Commission authority to set the rates for private insurers.

Section 23–983 deals with the determination of the rates themselves and provides:

"A. The state compensation fund shall be neither more nor less than self-supporting. * * * C. The commission shall determine the hazards of the different classes of occupations or industries, fix the premiums therefor at the *lowest rate consistent with the maintenance of a solvent compensation fund* * * *." (Emphasis added.)

The above-quoted sections were patterned after portions of the Utah work-

men's compensation statutes. The Utah Supreme Court construed their statutes in the early case of Scranton Leasing Co. v. Industrial Commission of Utah, 51 Utah 368, 170 P. 976 (1918). While the question of the power of the Utah Industrial Commission to fix different rates for public and private workmen's compensation carriers was not directly before the Court, the opinion contains the following statement:

> "In [sic] must be admitted that, whatever may be the power of the Industrial Commission to fix the rate, even for the state itself, still the rate when fixed is the subject of judicial inquiry as to its reasonableness * * *. Now, if the commission has fixed one rate for the state and another for other insurers for the same class of risk, how can it be contended that both rates are reasonable? If one is reasonable, the other must be too high or too low, unless we are permitted to inquire into the relative ability of the state and other insurers to carry the insurance and discriminate in favor of one as against the other according to its ability. Such a consideration is not only untenable, but indefensible on any theory of equal opportunity and square dealing." 170 P. at 980.

Harbor strenuously contends that this reasoning should be determinative of the instant petition. We do not agree.

■ Ordinarily, when a particular statute is taken from the laws of another state, the interpretation of that statute by the courts of that state is "highly persuasive" in our construction of the statute. In Re Moore's Estate, 67 Ariz. 65, 190 P.2d 914 (1948). However, the above-quoted portion of the Scranton case, supra, is merely dicta and does not appear to us to be a well-reasoned construction of the statute involved.

First, while there is a superficial logic in the statement that there can only be one reasonable rate, the fallacy becomes obvious upon closer examination. What may be a reasonable rate for the non-profit, "self-supporting" state compensation fund, would not necessarily be a reasonable rate for private insurance companies which must not only make a profit, but must also pay agents' commissions.

Second, an interpretation of these statutes which would require that the state fund and the private insurers charge the same premiums could prove financially disastrous for the former. (It should be recalled that A.R.S. § 23-983, subsec. C provides that rates should be fixed to provide for a solvent compensation fund.) If both the state fund and private insurers charged the same premiums, the high risk businesses would gravitate to the state fund, since the private insurers have the option of rejecting those whom they do not wish to insure. (If rejected by the private insurers these poor risks would have to turn to the state, since it is doubtful that they would possess the wherewithal to be self-insurers. The drain on the state fund in this situation could be considerable.) On the other hand, with the private insurers placed at a competitive disadvantage vis-à-vis the state, by being compelled to charge higher rates, some lower risk businesses will be induced to insure with the state fund in order to take advantage of the lower rate. These low risk businesses will balance out the high risk businesses, a certain number of which will always be unable to procure private insurance.

■ It is a fundamental rule that statutes are to be construed so as to carry out the purpose and intent of the legislature. Phoenix Title & Trust Company v. Burns, 96 Ariz. 332, 395 P.2d 532 (1964). Our Legislature explicitly provided for a self-supporting and *solvent* state compensation fund. To hold that the premium rates for both the state and private in-

**76**

surers must be the same would make the attainment of these goals highly problematical.

An additional consideration compels us to reject Harbor's contention that Scranton Leasing, supra, should be dispositive of the instant case. In our own recent case of Climate Control, Inc. v. Hill, 86 Ariz. 180, 342 P.2d 854 (1959), we approved, by implication, rate differentials between the state fund and private insurers. In construing A.R.S. § 23–983, subsec. E we stated:

"We have arrived at certain conclusions concerning the self-rating statute. *First,* and obviously, it authorizes the Commission to endorse on its policies of insurance a self-rating plan and permits tentative rates of premium to be modified in accordance with the loss experience of the assured. * * * *Second,* the language of the statute neither requires nor prohibits the Commission from modifying the rate of premium for basic costs upward or downward in accordance with loss experience." 86 Ariz. at 184, 342 P.2d at 856 and 857. (Emphasis in original.)

In short, by modifying rates under its self-rating plan the Commission creates a situation where the state fund charges lower premium rates than the private insurers.

One further consideration leads us to uphold the Industrial Commission's determination that the rates charged by the private insurers should be in excess of those charged by the state fund. Since 1929, the Industrial Commission has set the rates charged by the state fund at less than those charged by private carriers. (In 1929 the private carriers' rates were 10% higher.) We have held many times that the construction placed on a statute by the executive body which administers it, if acquiesced in for a long period of time, will not be disturbed unless such construction is manifestly erroneous. Bohannan v. Corporation Commission, 82 Ariz. 299,

313 P.2d 379 (1957). See also Long v. Dick, 87 Ariz. 25, 347 P.2d 581, 80 A.L.R. 2d 949 (1959).

The decision of the Court of Appeals, 7 Ariz.App. 254, 438 P.2d 323 (1968) is vacated, and the judgment of the trial court is reversed.

McFARLAND, C. J., UDALL, V. C. J., and STRUCKMEYER and BERNSTEIN, JJ., concur.