341 P.2d 427

Walter E. SWITZER, Jr., Appellant,

v.

CITY OF PHOENIX, Jack Williams, Mayor of the City of Phoenix, David P. Jones, Wesley Johnson, Faith I. North, V. A. Cordova, Dr. Joseph Madison Greer, and Clarence H. Shivvers, Members of the Phoenix City Council, John E. Burke, Phoenix City Clerk, Appellees.

No. 6770.

Supreme Court of Arizona.

July 1, 1959.

---

Gust, Rosenfeld, Divelbess & Robinette, Phoenix, for appellant.

William C. Eliot, City Atty., Merle L. Hanson, Anis Mitchell and Leven B. Ferrin, Asst. City Attys., Phoenix, for appellees.

STRUCKMEYER, Justice.

This is an action wherein appellant, an elector and real property taxpayer of the City of Phoenix, seeks a declaratory judgment and injunctive relief to prevent the issuance of certain street improvement bonds. The court below entered a summary judgment in favor of appellees, declaring that the ordinance of the City of Phoenix under which the bonds were issued did not violate the state constitution and was not otherwise unlawful.

On May 7, 1957, the city held a bond election at which the duly qualified electors authorized the issuance of certain street and highway improvement bonds; thereafter, on September 27, 1957, the city adopted its Ordinance No. S–1186, by which there was authorized the issuance of street and highway improvement bonds in the amount of $2,500,000, the principal and interest thereon to be paid from the city's share of the funds received from the Motor Vehicle Fuel and Gasoline Tax receipts collected by the State and distributed to the city pursuant to the applicable statutes.

Appellant first urges that the issuance of the bonds would increase the total indebtedness of the city above the four per cent limit set by the constitution of Arizona, Art. IX, § 8, A.R.S. Both the proposition submitted to the voters on May 7, 1957 and the Ordinance recite:

"* * * This bond and the issue of which it is a part are payable solely, as to both principal and interest, from the proceeds of revenues to be derived by said City from taxes collected by the State of Arizona and returned to the city for street and highway purposes. * * *"

It is the settled law of this state that bonds issued to finance public improvements, if made payable solely from the revenues to be derived from the operation of the improvement, do not constitute an indebtedness within the meaning of the limitation clauses of the constitution.

124

Guthrie v. City of Mesa, 47 Ariz. 336, 56 P.2d 655; Crandall v. Town of Safford, 47 Ariz. 402, 56 P.2d 660; Humphrey v. City of Phoenix, 55 Ariz. 374, 102 P.2d 82; Board of Regents of University of Arizona v. Sullivan, 45 Ariz. 245, 42 P.2d 619.

█ Appellant argues, however, that the same rule should not apply when the obligations are to be paid out of the fund created by the collection of a special excise tax. The authorities dealing with this problem are not entirely in accord, but the weight generally is to the effect that an obligation payable from a special fund created by the imposition of fees, penalties, or excise taxes and for the payment of which the general credit of the taxing authority is not pledged is not a debt within the meaning of constitutional debt limitations. See Stone v. City of Hobbs, 54 N.M. 237, 220 P.2d 704, and Annotation 100 A.L.R. 878; Gruen v. Tax Commission, 35 Wash.2d 1, 211 P.2d 651. We will follow the weight of authority at least to the extent where, as here, the fund from which the obligations are to be paid is created by voluntary contributions of the state to the city.

█ Appellant next urges that a municipality may not, under the existing law, pledge all the revenues to be received from the Motor Vehicle and Gasoline taxes to the repayment of highway improvement bonds. We notice that section 7 of the Ordinance is a pledge of revenues in the alternative. The city pledges all "or so much thereof as may be necessary." Consequently, the question presented is academic and does not pertain to an actual controversy. It is not subject to resolution by this court. Podol v. Jacobs, 65 Ariz. 50, 173 P.2d 758.

█ The city's Ordinance S–1186, among other things, promises the bond purchaser:

"* * * that no decrease in the proportion thereof [the Motor Vehicle Fuel Tax] payable to the City of Phoenix may be made while any of such bonds so remain outstanding and there is hereby vested in the holders of such bonds and the interest coupons thereto attached a contract right in the continuation of such tax and its allocation as above set forth."

And further,

"* * * The contract rights herein vested in the holders of such bonds shall extend to the imposition, collection and proper application of the street revenues [meaning the taxes collected by the State of Arizona and returned to the City for street and highway purposes] until such bonds shall have been paid in full as to principal and interest and shall not be subject to repeal, impairment or modification either by the city or by the

Legislature or people of the State of Arizona."

Appellant contends that the quoted language is an attempt by the city to bind the legislature and the state of Arizona not to decrease the state Motor Vehicle Fuel Tax nor to decrease the portion of the proceeds payable to the City of Phoenix until the bonds issued by the City of Phoenix are all paid and that as such it is invalid. In part we agree. To the extent that the language of the resolution purports to require the continuance of all laws without modification of the amount of the Motor Vehicle Fuel Tax or the proportion payable to the city, it is clearly a usurpation of the legislative function of the people of the State.

█ There can be no doubt that the legislature, in permitting the Motor Vehicle Fuel Tax to be used for the retirement of the bonds has, by clear implication, promised that it would do nothing to impair the obligation arising in consideration of the existing law. But a modification of the constitution and the statutes which does not lessen the likelihood of payment or delay payment of the bonds will not impair the obligation of the contract. Scougale v. Page, 194 Ark. 280, 106 S.W.2d 1023; Flint v. Duval County, 126 Fla. 18, 170 So. 587; State ex rel. Freeling v. Howard, 67 Okl. 296, 171 P. 41. The bondholders cannot be injured by modification of the statute, such as a decrease in the proportion payable to the city, so long as they receive their quid pro quo, and the legislature and the people of the state may make any changes in the law, organic and otherwise, save those which will impair the obligation of the contract. We therefore hold that the broad language alluded to, in so far as it purports to restrict any changes in the existing law, is ultra vires and ineffective to transfer to the bondholders the right to a continuation without modification.

There is an implication from the appellant's argument that a construction of the statutes committing the legislature and the State of Arizona to the continuation of a law imposing a tax, since of necessity the law must be continued in order to retire the contemplated bonds, violates that portion of Art. IX, § 1 of the constitution which provides:

"The power of taxation shall never be surrendered, suspended, or contracted away."

Appellant directs the attention of this court to Gruen v. Tax Commission, supra. There, with four judges dissenting, the Washington Supreme Court, in construing an identical provision, stated [35 Wash.2d 1, 211 P.2d 680]:

"It is crystal clear that the legislature did not in any way relinquish or yield its right to impose a tax * * *."

The four dissenting judges were of the opinion that where the state pledged the proceeds of an excise tax on cigarettes to the payment of bonds, the power of taxation was suspended, surrendered, and contracted away until the retirement of the bonds—possibly thirty years.

We have considered Art. IX, § 1, and arrived at the same conclusion as the majority in the Gruen case, but for different reasons.

The Minutes of the Constitutional Convention of this state establish that the article was introduced in the Convention as Substitute Proposition No. 106. This proposition came before the Convention for discussion on Saturday morning, November 19, 1910. At that time, the Honorable George W. P. Hunt, who later became the seven-time Governor of Arizona, said:

"In regard to that first section. The Committee on Taxation had a memorial gotten up by the Tax Association composed of men all over the United States who have made this a study for years, and I have on my desk here letters from nearly every professor on economics in all the universities of the country, from Harvard, in Massachusetts to Stanford, in California, and they are for anyone who wants to look at these letters. They one and all believe this is the only way to put this in the constitu-

tion, and if the members of the convention will allow me to read them a letter from Washington, which is a sample of the letters I have received, it will throw some light on the subject. It is from J. E. Frost, President of the State Board of Tax Commissioners of the State of Washington, at Olympia, Washington."

Here follows the letter, the pertinent portions of which we set forth:

" 'Dear Sir: I am just in receipt of a letter from the Hon. Allen R. Foote, of Columbus, Ohio, President of the International Tax Association, asking me to express to you my views on the subject of constitutional provisions relative to taxation.

\*　　\*　　\*　　\*　　\*　　\*

" 'The right to impose taxes is a legislative power, inherent in organized government. In the absence of constitutional limitations, a legislature may enact such tax laws as it sees fit, subject only to the restrictions contained in the constitution of the United States. Everything over which the authority of the state .reaches may be the subject of taxation, whether it be person, property, or occupation.

\*　　\*　　\*　　\*　　\*　　\*

" 'There are certain safeguards, however, that should be provided: *First; The legislature should be pro-*

*hibited from contracting away the right to tax anything or person whatsoever, or from making any irrepealable grant of exemption.'"* (Emphasis supplied.) [1]

From the content of the letter, it can be gleaned that since the legislature should be prohibited from contracting away the right to tax, the Convention intent was to accomplish the converse; that is, that the legislature would have the right to tax anything and all persons whatsoever. Viewed in this light, it would appear that by the use of the words "power of taxation," the Convention meant "the power to impose taxes."

▆ The complete text of the Memorial referred to in the statement by the Honorable George W. P. Hunt can be found in the report of State and Local Taxation, 5th National Conference of the National Tax Association held in Richmond, Virginia, September, 1911, pp. 451 through 457. A reading of the Memorial leads us to the conclusion that the language contained in the first sentence of Art. IX, § 1 was designed to leave legislators unencumbered in so far as their power to impose taxes. We note also from the report of the Third Conference of the same Association, p. 88, that one M. H. Carver of the Louisiana State Tax Commission is quoted as stating:

"There is little necessity for putting anything at all in the constitution about taxation, and some distinguished authorities hold that everything on the subject in a constitution is dangerous. To meet the decision of the Supreme Court of the United States, though, in the Dartmouth College case [Trustees of Dartmouth College v. Woodward], 4 Wheat. 518, [4 L.Ed. 629], it is well to provide:

" 'That the power of taxation shall never be suspended, surrendered or contracted away. * * *' "

Thus, it becomes apparent that the first sentence of Substitute Proposition No. 106, now Art. IX, § 1, was adopted for the purpose of restricting the legislature's right to alienate the power to tax anything and all persons. The prohibition is against the irrepealable grant of immunity from taxation. It was not intended to prohibit the levying of a tax. The scope of the language was communicated to, and understood by, the members of the Constitutional Convention.

▆ Therefore, we are of the opinion that the first sentence of Art. IX, § 1 is a prohibition against the surrender or re-

---

1. In the discussion that followed, Mr. M. G. Cunniff stated from the floor: "I am satisfied with the proposition as it stands, but I am not satisfied that the courts of Arizona will get the right interpretation."

linquishment of the right to impose a tax. In the instant case, "it is crystal clear" that the legislature is not contracting away the right to impose a tax. The legislature has imposed a tax and has simply applied the proceeds of the tax to a particular purpose.

Except as modified by this opinion, the judgment of the court below is affirmed.

PHELPS, C. J., and UDALL and JOHNSON, JJ., concurring.

NOTE: BERNSTEIN, J., having heard this case in the Superior Court, disqualified, and took no part in the determination of this appeal.