958 P.2d 1

CUTTER AVIATION, INC., an Arizona corporation, Plaintiff–Appellant,

v.

The ARIZONA DEPARTMENT OF REV-ENUE, a Department of the State of Arizona, Maricopa County, a political subdivision of the State of Arizona, De-fendants–Appellees.

SOUTHWEST AIRLINES COMPANY, a Texas corporation, Plaintiff– Appellant, Cross Appellee,

v.

MARICOPA COUNTY, Defendant– Appellee, Cross Appellant,

Arizona Department of Revenue, Defendant–Appellee.

Nos. 1 CA–TX 95–0017, 1 CA–TX 96–0001.

Court of Appeals of Arizona, Division 1, Department T.

May 22, 1997.

Review Denied June 25, 1998.

Michael A. Bosco, Jr., Leonard J. McDonald, Jr., Phoenix, for Plaintiff–Appellant Cutter Aviation.

Helm & Kyle, Ltd. by John D. Helm, Roberta S. Livesay and Michelle L. Margolies, Tempe, for Defendant–Appellee, Cross Appellant Maricopa County.

Grant Woods, Attorney General by Stephen C. Lepley and Frank Boucek, III, Assistant Attorneys General, Phoenix, for Defendant–Appellee Arizona Department of Revenue.

Fennemore Craig, P.C. by Paul J. Mooney and Kendis K. Muscheid, Phoenix, for Plaintiff–Appellant, Cross–Appellee Southwest Airlines.

## OPINION

WEISBERG, Judge.

Cutter Aviation, Inc. ("Cutter") and Southwest Airlines Co. ("Southwest") filed separate actions against Maricopa County ("the county") and the Arizona Department of Revenue ("DOR") in the Arizona Tax Court for refunds of property taxes that each had paid under protest. The tax court denied refunds to Cutter and Southwest and each has separately appealed. Because their appeals involve similar issues, we address both in this single opinion.

These appeals concern the classification of the subject property and constitutionality of

Arizona's short-lived statutory scheme for ad valorem taxation of private taxpayers' possessory interests and improvements of possessory rights in and on lands owned by governmental entities. Although we reject the constitutional challenges, we reverse because the tax court erred by affirming DOR's classification of Cutter's and Southwest's possessory interests as class three rather than class twelve property.

## I. LEGAL BACKGROUND

In 1985 the legislature extended ad valorem property taxation to previously untaxed rights to possess and actual possession of land or improvements under non-freehold rights. 1985 Ariz. Sess. Laws ch. 264, §§ 1, 2; see also A.R.S. §§ 42–681 through 42–686 (1991) (repealed by 1995 Ariz. Sess. Laws ch. 241, § 43, and ch. 294, § 8 (effective retroactively to January 1, 1995)). A.R.S. section 42–682 (1991) subjected such rights in the property of federal, state, county, and municipal governments and their subdivisions, defined as "possessory interests," to ad valorem taxation as unsecured personal property, to be assessed at 1% of their full cash value. A.R.S. §§ 42–681(3), –682 (1991); see generally A.R.S. tit. 42, ch. 3. A.R.S. section 42–684 (1991) expressly exempted from this tax a large variety of possessory interests in governmental property. A.R.S. section 42–685 (1991) provided valuation reduction formulas applicable in the initial eight to ten years of possessory interests created in property located in slum clearance and redevelopment areas. See A.R.S. tit. 36, ch. 12, art. 3.

In an unpublished and unappealed ruling in January 1993, the tax court invalidated the exemptions contained in former A.R.S. section 42–684 (1991) on the ground that Ariz. Const. art. IX, § 2, did not authorize them. See Scottsdale Princess Partnership v. Maricopa County, 185 Ariz. 368, 371 n. 2, 916 P.2d 1084, 1087 n. 2 (Ariz.App.1995). In the 1993 legislative session, the legislature responded to the tax court's ruling by: (1) repealing former A.R.S. section 42–684 (1991); (2) adding a new class twelve to A.R.S. sections 42–162 and –227 for possessory interests to be assessed at 1% of full cash value; (3) extensively amending A.R.S. sections 42–681

through –683; (4) adding new sections 42–684 and –687; and (5) enacting a number of exemptions from the revised possessory interest tax as A.R.S. sections 42–271.01 through –271.04. See 1993 Ariz. Sess. Laws ch. 191.

Pursuant to the amended A.R.S. section 42–162(A)(12)(c), class twelve included, in part:

(c) Interests in property located on state, city, town or county airports and public airports operating pursuant to sections 2–311, 2–312 and 2–313, if the property is used for or in connection with aviation, including hangars, tie-downs, aircraft maintenance, sales of aviation[-]related items, charter and rental activities, parking facilities and restaurants, stores and other services located in a terminal.

New A.R.S. section 42–683 adopted an alternative method of valuing class twelve property at the election of the taxpayer. It allowed the full cash value of a possessory interest in class twelve to be "determined as the capitalized value of the property based on the gross annual rental amounts paid by the holder of the possessory interest using the capitalization rate prescribed by the department and standard appraisal methods." See 1993 Ariz. Sess. Laws ch. 191, § 8.

The county brought a declaratory judgment action against the state to challenge the constitutionality of the exemptions in new A.R.S. sections 42–271.01 through –271.04. On July 21, 1993, in an unpublished and unappealed ruling, the tax court held that those sections violated Ariz. Const. art. IX, § 2. Maricopa County v. State of Arizona, Arizona Tax Court No. TX 93–00217.

In response, the legislature adopted, retroactive to January 1, 1993, the possessory interest taxing scheme at issue in these appeals. See 1994 Ariz. Sess. Laws ch. 293, § 8. After these changes, A.R.S. section 42–681 provided in part:

In this article, unless the context otherwise requires:

. . . .

3. "Possessory interest" means possession of public property pursuant to an agreement with a governmental entity re-

gardless of how the interest is identified in any document by which it is created, except possession pursuant to and by virtue of ownership of a freehold interest in the real property or ownership of the improvements or personal property.

A.R.S. section 42–681(4) defined "public property" as "real or personal property or improvements, or any combination of such property, owned or held by" a government entity.

1994 Ariz. Sess. Laws ch. 293, § 1 left unchanged the class twelve classification adopted as A.R.S. section 42–162(A)(12)(c) in the 1993 legislative session. However, the 1994 amendment added new subsections (g) through (k) to A.R.S. section 42–162(A)(12), thereby adding to class twelve property a number of the possessory interests that were previously exempted by former A.R.S. sections 42–271.01 through –271.03.

Section 1 of the 1994 enactment also added a new class thirteen, retroactive to January 1, 1993. Like class twelve property, this new class of property was to be assessed at 1% of full cash value. A.R.S. § 42–227(A)(13) (1994). Class thirteen included, in part:

> (b) Improvements located on public property, as defined in section 42–681, owned by the lessee of such public property provided:
>
> (i) That the improvements shall become the property of the owner of the public property upon termination of the possessory interest in the public property.
>
> (ii) That both the improvements and the public property are used for or in connection with aviation, including hangars, tie-downs, aircraft maintenance, sales of aviation-related items, charter and rental activities, parking facilities and restaurants, stores and other services located in a terminal.
>
> (iii) That both the improvements and the public property are located on a state, county, city or town airport or a public airport operating pursuant to sections 2–311, 2–312 and 2–313.

Class 13(b) functioned as the direct counterpart of class 12(c). Consequently, A.R.S. sections 42–162(A)(12)(c) and (13)(b) provided

identical treatment in the situation described in those subsections, retroactive to the effective date of subsection 12(c), whether the improvements in question were deemed owned by the taxpayer lessee or by the governmental lessor.

In 1995, the legislature repealed A.R.S. sections 42–681 through –687 effective retroactively to January 1, 1995. *See* 1995 Ariz. Sess. Laws ch. 294, § 8. In 1996, the legislature replaced ad valorem property taxation of possessory interests with the government property lease excise tax set forth in A.R.S. tit. 42, ch. 13. 1996 Ariz. Sess. Laws ch. 349, §§ 1(B), 5.

## II. FACTS AND PROCEDURAL HISTORY

### A. Southwest Airlines

On April 30, 1991, Southwest entered into a lease with the City of Phoenix Aviation Department ("the city"). The lease covered approximately 12 acres at Phoenix Sky Harbor International Airport ("Sky Harbor") and required Southwest to build improvements on the leased property, including a maintenance hangar and support facilities.

For tax year 1993, the county assessor classified Southwest's hangar and maintenance facility as class three (commercial) property taxable on 25% of full cash value. *See* A.R.S. §§ 42–162(A)(3), –227(A)(3). The assessor classified Southwest's leased land as class twelve property taxable on 1% of full cash value. *See* A.R.S. §§ 42–162(A)(12), –227(A)(12) (1994).

America West Airlines, a competitor of Southwest that leased land at Sky Harbor under a lease similar to Southwest's, received the same tax treatment as Southwest for tax year 1993. America West, however, appealed its assessment to the State Board of Tax Appeals ("the Board"). The Board ruled that America West's possessory interest in the improvements on the airport leasehold should have been classified, like the leasehold itself, as class twelve property. The Department of Revenue ("DOR") did not challenge this ruling in the tax court.

Meanwhile, Southwest paid its assessment on the improvements under protest and

brought this action against the county and DOR directly in the tax court pursuant to A.R.S. sections 42–177, –204, –246, and –254. Southwest argued that its improvements should have been taxed as either class twelve or class thirteen property, and that taxing it differently from America West denied Southwest equal protection. While denying these arguments, the county asserted that the possessory interest taxation scheme itself was unconstitutional.

On cross-motions for summary judgment, the tax court ruled for DOR. It concluded that Southwest owned the improvements under the lease and, therefore, they did not qualify for class twelve treatment. It further held that, although Southwest's improvements fit the statutory criteria for class thirteen property, to apply class thirteen retroactively to tax year 1993, as the 1994 enactment contemplated, would constitute a gift of public funds in violation of the Gift Clause of the Arizona Constitution. *See* Ariz. Const. art. IX, § 7. The court concluded that Southwest's improvements were properly taxed as class three (commercial) property. The court also denied the county's constitutional challenges.

The remaining question, whether the disparate treatment of Southwest and America West for tax year 1993 constituted constitutionally unlawful discrimination, was tried to the court, which ruled for the county. Southwest has appealed and the county has filed a cross-appeal.

### B. Cutter Aviation

Cutter buys, sells and services small aircraft and provides related products and services. In December 1983 Cutter and the city entered into a lease of approximately 12.5 acres of unimproved land at Sky Harbor. The lease required Cutter to construct a 20,000 square-foot administration building, a 70,000 square-foot hangar, and support facilities on the leased land. These improvements were projected to cost $3.8 million, and were required to be substantially complete within twelve months after April 1, 1984, or another agreed start date.

For tax year 1993, the county assessor classified Cutter's hangar and administration building as class three (commercial) property taxable on 25% of full cash value. *See* A.R.S. §§ 42–162(A)(3), –227(A)(3). The assessor classified its leased land, on which these improvements had been built, as class twelve property taxable on 1% of full cash value. A.R.S. §§ 42–162(A)(12), –227(A)(12) (1994).

Cutter paid the assessment on its improvements under protest and brought an action in the tax court for a refund. Its amended complaint sought reclassification of the improvements as either class twelve or class thirteen property. The county responded as it had to Southwest's complaint. On cross-motions for summary judgment, the tax court ruled for the county. It stated:

> For reasons similar to those expressed in this Court's March 23, 1995 minute entry in *Southwest Airlines,* TX 94–00026, the Court finds that the Cutter improvements in dispute here are owned by Cutter. Having found that, the Court also concludes, for reasons similar to those expressed in *Southwest,* the property is not entitled to a Class 13 classification for 1993.

Cutter has timely appealed.

This court has jurisdiction pursuant to A.R.S. section 12–2101(B). The appeals were assigned to Department T of this court pursuant to A.R.S. sections 12–120.04(G) and –170(C).

### III. ISSUES

We address the following issues:

A. Whether Southwest and Cutter own the improvements on their leased land, thereby precluding their classification as possessory interests under class twelve;

B. Whether the county has standing to challenge the constitutionality of a state statute;

C. Whether the possessory interest taxation scheme violated Ariz. Const. art. IX, § 1 (the Uniformity Clause);

D. Whether the possessory interest taxation scheme constituted special legislation in violation of Ariz. Const. art. IV, pt. 2, § 19;

E. Whether the possessory interest taxation scheme created exemptions in violation of Ariz. Const. art. IX, § 2(6);

F. Whether the separate classification and taxation of possessory interests violated Ariz. Const. art. 9, § 1's prohibition against surrendering or contracting away the power to tax.

## IV. ANALYSIS

### A. Ownership of Improvements

■ Class 12(c) consisted of possessory interests located on public airports "if the property is used for or in connection with aviation." The parties agree that the improvements at issue are located on a public airport and are used in connection with aviation, but dispute whether they are possessory interests. "Possessory interest" is defined in A.R.S. section 42–681(3) (1994):

> 3. "Possessory interest" means possession of public property pursuant to an agreement with a governmental entity regardless of how the interest is identified in any document by which it is created, *except possession pursuant to and by virtue of* ownership of a freehold interest in the real property or *ownership of the improvements or personal property.*

(Emphasis added.) The issue, then, is whether the improvements were owned by the city or by Southwest and Cutter. If owned by Southwest and Cutter, the improvements would not qualify as possessory interests with class 12 treatment. The trial court concluded that, under the leases with the city, the improvements were owned by Southwest and Cutter. We disagree.

This issue requires us to construe the meaning of "ownership" as used in A.R.S. section 42–681(3). "Ownership" is not a defined term in Title 42, and we are therefore required to give it its "common and approved" meaning. A.R.S. § 1–213. Our ultimate goal in statutory construction is to ascertain and give effect to the legislative intent. *Devenir Assocs. v. City of Phoenix,* 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991). When interpreting a statute, we first look to the statute's language; if it is plain and unambiguous, we apply it without resorting to other rules of construction. *State v.*

*Reynolds,* 170 Ariz. 233, 234, 823 P.2d 681, 682 (1992). If the language of the statute is not clear, we may look to other indicia of legislative intent, such as the subject matter, effects, consequences, and the reason and spirit of the statute. *State v. Iniguez,* 169 Ariz. 533, 536, 821 P.2d 194, 197 (Ariz.App. 1991). We also note that the provision at issue must be considered in the context of the entire statute of which it is a part. *Guzman v. Guzman,* 175 Ariz. 183, 187, 854 P.2d 1169, 1173 (Ariz.App.1993).

BLACK'S LAW DICTIONARY (6th ed.1990) defines "ownership" as "[the] collection of rights to use and enjoy property, including [the] right to transmit it to others. The complete dominion, title, or proprietary right in a thing or claim. The entirety of the powers of use and disposal allowed by law." *Id.* at 1106 (citation omitted).

This definition is consistent with that provided by our supreme court in *Hardinge v. Empire Zinc Co.,* 17 Ariz. 75, 90–91, 148 P. 306, 312 (1915), which was concerned with the ownership of corporate purchase options. The court held that the shareholder's interest in the options did not constitute "ownership" because his interest was expressly "subject to the control, handling and disposal by" the remaining shareholders.

> The contract which, on the one hand, "transfers and assigns" an estate in property, and on the other hand withholds from the transferee or assignee all right of control over the property, and all right of disposal of the property, is lacking in the elements of a sale or transfer of title, and vests no rights of ownership of title in the transferee, for the reason one who has no right to control, handle or dispose of a thing cannot be considered its owner, for the essential attributes of ownership of property, real and personal, are the rights in the owner to control, handle and dispose of the thing owned.

*Id.* These authorities thereby instruct that the *sine qua non* of ownership is the right to control and dispose of the asset.

Later cases from our supreme court, however, have suggested that such a strict definition is not required and that "ownership"

should be given a liberal construction in order to effectuate the legislature's objective. *See Pinkerton v. Pritchard,* 71 Ariz. 117, 123, 223 P.2d 933, 937 (1950) (quoting *City of Phoenix v. State ex rel. Harless,* 60 Ariz. 369, 137 P.2d 783 (1943)). In *Harless,* the court stated:

> The word "owner" has no technical meaning, but its definition will contract or expand according to the subject matter to which it is applied. As used in statutes it is given the widest variety of construction, usually guided in some measure by the object sought to be accomplished in the particular instance.

60 Ariz. at 377, 137 P.2d at 786.

These cases thus require us to interpret "ownership" by focusing on the context in which the term is used and on the legislature's objective in enacting the subject legislation. Using this approach, we conclude that the legislature intended that "ownership" necessarily includes the right to control and dispose of the asset.

The applicable context, of course, is the taxation of property interests and, more particularly, possessory interests. For taxation purposes, "ownership" has traditionally meant ownership in fee, which includes the rights of control and disposal. *See, e.g., Navajo County v. Peabody Coal Co.,* 23 Ariz. App. 101, 102, 530 P.2d 1134, 1135 (1975) (although lessee "undoubtedly had some interest in the property," it was "not tantamount to fee ownership" and therefore could not be taxed); *Pima County v. American Smelting & Refining Co.,* 21 Ariz.App. 406, 408–09, 520 P.2d 319, 321–22 (1974) (mining company's interest in minerals extracted from property pursuant to a lease from federal government was a leasehold rather than fee interest, and therefore was not taxable because the legislature had not provided for taxation of leaseholds). Although there is no constitutional prohibition against it, the Arizona legislature has traditionally chosen not to apply property taxation to leasehold interests. *See Maricopa County v. Fox Riverside Theatre Corp.,* 60 Ariz. 260, 264, 135 P.2d 513, 514 (1943); *Peabody Coal Co.,* 23 Ariz. App. at 103, 530 P.2d at 1136 ("The intention of the Legislature not to tax leaseholds is

clear."); *American Smelting & Refining Co.,* 21 Ariz.App. at 409, 520 P.2d at 322; *Navajo County v. Monument Valley Inn, Inc.* 13 Ariz.App. 525, 527, 478 P.2d 140, 142 (1970).

The legislature's purpose in enacting the possessory interest taxation scheme was to extend property taxation to property interests that previously had not been taxed. Accordingly, its exclusion of ownership interests in the possessory interest definition, A.R.S. § 42–681(3), was intended to exclude property already subject to property taxation. In this context, ownership should be interpreted to mean the type of property interest that has traditionally been subject to taxation, i.e., fee interests with the authority to control and dispose of the property, rather than leasehold interests.

Improvements that a lessee has full authority to control or destroy need not be made subject to the possessory interest tax because they are already taxable. On the other hand, where the putative taxpayer leases property and the lease significantly restricts the lessee's authority to control and dispose of the improvements thereon, the lessee should not be considered to be the "owner" of the improvements.

Applying this standard, Southwest and Cutter were not the owners of the improvements. The leases mandated the improvements to be built and the uses to which they could be put, and required the city's approval of the building specifications. The leases also required that Southwest and Cutter maintain insurance on the improvements which designated the city as the named insured. Neither Southwest nor Cutter were allowed to transfer any interest in their leaseholds, which would include any interest in the improvements, without the city's prior written consent. In addition, upon termination, the improvements were not subject to Southwest's or Cutter's removal or destruction but were to be the property of the city.

Under the leases, then, Southwest and Cutter did not enjoy traditional rights of control and disposition of the improvements. We therefore conclude that they were not owners for purposes of A.R.S. section 42–681(3).

This conclusion is supported by *Maricopa County v. Novasic*, 12 Ariz.App. 551, 473 P.2d 476 (Ariz.App.1970), which involved a lease remarkably similar to those at issue here. The lease in *Novasic* covered land at Sky Harbor and required the construction of an office building on the land. The dispute concerned whether the building was owned by the city (the lessor) or the lessee. If the city owned the building, it would be exempt from ad valorem taxation; if the tenant owned the building, it would be taxable.

In *Novasic* we recognized the general rule that a permanent structure placed upon and attached to the realty by a tenant is real property belonging to the lessor. *Id.* at 553, 473 P.2d at 478. We further stated:

> This general rule is subject to the exception that the parties by express agreement may treat the building as belonging to the tenant, in which case the right to removal of the building at the termination of the lease is incidental to that ownership. *Marcos v. Texas Co.*, 75 Ariz. 45, 251 P.2d 647 (1953); *Williams v. Long*, 1 Ariz.App. 330, 402 P.2d 1006 (1965).

*Id.* We held that, absent "clear and express language in [the] lease evidencing an intent to treat the improvements as personal property with ownership in the lessee," the improvements would be considered real property owned by the lessor. *Id.* at 554–55, 473 P.2d at 479–80. After analyzing the lease in *Novasic*, which did not contain such clear and express language, we concluded that the building was owned by the city. *Id.*

Like the leases in these appeals, the lease in *Novasic* strictly limited the uses to which the tenant could apply the building, and prohibited the tenant from "subleasing" the building without the lessor's consent. The lessor had the right to approve all building plans before the tenant began construction and the tenant was required to provide insurance on the building that named both the tenant and the lessor as insureds. Moreover, the *Novasic* lease provided that, upon termination of the lease, the building became the property of the city.

Southwest's and Cutter's leases similarly contain no language that clearly and expressly provides that the improvements are to be treated as being owned by the tenants. Moreover, the same provisions that led this court to conclude that the building in *Novasic* was owned by the city are present in the Southwest and Cutter leases. We see no reason to reach a different result here than we did in *Novasic*.[1] Furthermore, although the county attacks *Novasic* as outdated precedent, it gives us no good reason to abandon or limit it, and nothing in Arizona's property tax classification system that is relevant to the meaning of A.R.S. sections 42–162(A)(12) or –681 has changed since *Novasic* was decided.

Our conclusion that the legislature intended interests such as Southwest's and Cutter's to be included within class 12 is further bolstered by the legislature's addition of class 13 in 1994, retroactive to 1993. The new class 13 included:

> (b) *Improvements* located on public property, as defined in section 42–681, *owned by the lessee* of such public property provided:
>
> (i) That the improvements shall become the property of the owner of the public property upon termination of the possessory interest in the public property.
>
> (ii) That both the improvements and the public property are used for or in connec-

---

1. The county's attempts to distinguish the leases here from the lease in *Novasic* are unavailing. We are unpersuaded by the few provisions in the leases, pointed to by the county, that differ from the lease in *Novasic*. For example, the lease provides that the city may exercise its power of eminent domain over the improvements and that the net condemnation proceeds would belong to Southwest and Cutter, which the county suggests indicates that the improvements are not owned by the city. But this is understandable since Southwest and Cutter indisputably own at least leasehold interests in the property which would be subject to condemnation by eminent domain. *See Mobil Oil Corp. v. Phoenix Cent. Christian Church*, 138 Ariz. 397, 399, 675 P.2d 284, 286 (Ariz.App.1983). The county also argues that Southwest's and Cutter's leaseholds only extend to the land because the lease states that the premises are available in an unimproved condition and the ordinance approving the lease referred to it as a "land lease." This language is unremarkable for the reason that, when the parties entered into the lease, no improvements had yet been built.

tion with aviation, including hangars, tie-downs, aircraft maintenance, sales of aviation-related items, charter and rental activities, parking facilities and restaurants, stores and other services located in a terminal.

(iii) That both the improvements and the public property are located on a state, county, city or town airport or a public airport operating pursuant to sections 2–311, 2–312 and 2–313.

A.R.S. § 42–162(A)(13)(b) (emphasis added). Class 13(b) thus applied in the same situation as class 12(c) but explicitly included improvements owned by the lessee if such improvements were to become the property of the government lessor at the expiration of the lease term. Like class 12, class 13 was taxed on 1% of full cash value. Therefore, regardless who is considered the owner, improvements such as Southwest's and Cutter's would be afforded the same tax treatment.

We ordinarily presume that a subsequent amendment is intended by the legislature to change the law existing at the time the amendment was enacted, see *Brousseau v. Fitzgerald,* 138 Ariz. 453, 455, 675 P.2d 713, 715 (1984), which would contravene our conclusion here. In the instant case, however, this presumption is inapplicable because the legislative history strongly indicates that Senate Bill ("SB") 1101, which created class 13, was intended to *clarify* the scope of class 12 rather than alter it.

For example, the legislative record states that SB 1101 is "intended to clarify the possessory interest legislation enacted last year." Explanation of Johnson Floor Amendment to SB 1101. Also, the Bill Summary for SB 1101 explained that the bill "[c]larifies the definition of ... possessory interests in public airports, to include the ownership of improvements made by a lessee, provided that the improvements are or become the property of the government entity at the termination of the possessory interest."

"While subsequent legislation clarifying a statute is not necessarily controlling on a court, it is strongly indicative of the legislature's original intent." *Police Pension Bd. v. Warren,* 97 Ariz. 180, 187, 398 P.2d 892, 896 (1965); *see also City of Mesa v. Killingsworth,* 96 Ariz. 290, 294–95, 394 P.2d 410, 413 (1964); *Fund Manager v. Tucson Police & Fire Pub. Safety Personnel Retirement Sys. Bd.,* 147 Ariz. 1, 6, 708 P.2d 92, 97 (Ariz.App. 1985). We therefore conclude that the legislature's 1994 addition of class 13(c), made retroactive to 1993, expressly clarified the legislature's intent that possessory interests included improvements such as Southwest's and Cutter's.

For the foregoing reasons, we conclude that the tax court erred by holding that Southwest and Cutter owned the improvements at issue here and that the improvements therefore could not be taxed as class twelve property. Accordingly, Southwest and Cutter are entitled to their requested refunds.[2]

**B. County's Standing**

Southwest, Cutter, and DOR contend that the county lacks standing or legal authority to challenge the constitutionality of the tax statutes at issue. They rely on the proposition that a county is a governmental subdivision of the state and has only such powers as the Arizona Constitution and statutes confer on it expressly or by necessary implication. *See Maricopa County v. Municipal Water Conservation Dist. No. 1,* 171 Ariz. 325, 330, 830 P.2d 846, 851 (Ariz.App. 1991). They also cite our decision in *Town of Wickenburg v. State,* 115 Ariz. 465, 565 P.2d 1326 (Ariz.App.1977), for the proposition that a county may challenge the constitutionality of a state statute only if specifically authorized by the Arizona Constitution.

Assuming *arguendo* that the county does lack standing to challenge these statutes, we nevertheless exercise our discretion to consider the county's arguments. We are influ-

2. Because we conclude that Southwest and Cutter's improvements should have been classified as class twelve property, we do not address the trial court's conclusion that retroactive application of class 13 would violate the Gift Clause, nor

Southwest's claim of unlawful discrimination arising from the county's classification of its improvements as class three while classifying America West's as class 12.

enced by the experience of another panel of this court in *Maricopa County v. State (Sherwood)*, 187 Ariz. 275, 928 P.2d 699 (Ariz. App.1996). In that case DOR and the individual intervenor appellants cited *Town of Wickenburg* and earnestly advanced the proposition that the county lacked standing to challenge the constitutional validity of a state statute. At oral argument, however, the appellants stated that they no longer challenged the county's standing and requested that the court address the county's arguments. Noting that standing was not a constitutional mandate in Arizona, *see In re Strobel*, 149 Ariz. 213, 216, 717 P.2d 892, 895 (1986), the court accepted the appellants' abandonment of the standing issue and addressed the merits of the appeal. The court gave the following reasons for doing so:

> Judicial economy and minimizing expenditure of both public and individual funds in pursuing this litigation support accepting appellants' abandonment of the standing issue. As we were informed at oral argument, if the county were found to lack standing, the county would simply substitute individual taxpayers as plaintiffs. A taxpayer has standing to challenge the validity of a state taxing statute in a declaratory judgment action based on his liability to replenish the deficiency caused by the statute's operation. We do not doubt that the county could find willing plaintiffs among the hundreds of thousands of owners of property valued in a nonagricultural classification.

187 Ariz. at 279 n. 7, 928 P.2d at 703 n. 7 (citations omitted).

Although Southwest, Cutter, and DOR have not abandoned the standing issue, we find the reasons expressed in *Sherwood* for addressing the county's challenges to a state statute to be equally valid in the instant case. Addressing the county's arguments here will conserve judicial resources and prevent the additional litigation expense necessary to substitute individual taxpayers into the present litigation. *See id.* Accordingly, we elect

to address the constitutional issues that the county has properly preserved and are necessary to resolve these appeals.

## C. The Uniformity Clause

■ The Uniformity Clause requires that "[a]ll taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only." Ariz. Const. art. IX, § 1. The power to classify property for ad valorem taxation is within the discretion of the legislature. Legislative classifications for such purposes, however, must not be arbitrary, specious or fanciful. They must be reasonable and rest on real differences. *People's Finance & Thrift Co. v. Pima County*, 44 Ariz. 440, 445–46, 38 P.2d 643, 645 (1934); *accord In re America West Airlines, Inc.*, 179 Ariz. 528, 531, 880 P.2d 1074, 1077 (1994).

The county argues that A.R.S. section 42–162(A)(12) (1993), which established class 12, and A.R.S. section 42–162(A)(13) (1994), which established class 13, violated the Uniformity Clause.[3] It contends that the separate classification and taxation of possessory interests resulted in dissimilar tax treatment for similarly situated property. It argues that the statutes violated the Uniformity Clause in two ways: 1) by treating properties in the same industry with the same use differently based upon whether they are held as a possessory interest or a fee interest; and 2) within the possessory interest class, treating them differently based upon the use of the property. For the following reasons, we conclude that these classifications did not violate the Uniformity Clause.

### 1. *America West*

Because the county's arguments rely primarily upon *America West*, which held that A.R.S. section 42–705(C) (1991)[4] violated the Uniformity Clause, we begin with a discussion of that case. A.R.S. section 42–705 provided the standards for valuing flight proper-

---

**3.** The county also challenges the constitutionality of former A.R.S. sections 42–684 and –685. We have addressed these challenges in *Scottsdale Princess Partnership v. Maricopa County*, 191 Ariz. 499, 958 P.2d 15 (App.1997).

**4.** Repealed by 1995 Ariz. Sess. Laws ch. 249, § 35 (effective January 1, 1995).

ty for ad valorem property taxation. A.R.S. section 42–705(A) (1991) required DOR to tax flight property at a rate equal to the sum of the average rates for primary and secondary property taxes throughout the state for the current year. However, for small airlines, defined as those not exceeding specific system-wide average passenger or payload limits, former A.R.S. section 42–705(C) capped the annual tax at 1% of full cash value.

America West operated many aircraft in Arizona that met the alternative passenger and payload criteria of A.R.S. section 42–705(C), but its system-wide average did not. Accordingly, none of its aircraft, even those meeting the criteria, qualified for the 1% cap. America West therefore challenged former A.R.S. section 42–705(C) on uniformity grounds because it taxed identical property differently depending upon the average size of the owner's aircraft, rather than upon the characteristics of the taxed property itself. Our supreme court agreed.

The court first noted that the purpose of the Uniformity Clause is to ensure that each taxpayer's property bear a just proportion of the total property tax burden. *America West*, 179 Ariz. at 531, 880 P.2d at 1077. It also explained that, although creating classifications for property tax purposes was within the discretion of the legislature, those classifications

> must be real, not fanciful, and based on the nature of the property or on some other real difference in its use, utility or productivity. . . . Thus, identical or similar property put to different uses or used for the same purpose in different industries may be put in different classifications. However, similar property used in the same industry for the same purpose cannot be classified differently for ad valorem taxation simply because of the size, wealth, or location of its owner.

*Id.* at 535, 880 P.2d at 1081. The court concluded that the classification in A.R.S. section 42–705 did not meet this standard:

> [T]he statute penalizes America West for the number or value of its possessions (airplanes). Thus, we have an ad valorem tax graduated, not by differences in the property or its use, but by differences in

the nature of other property belonging to the owners, a distinction that, if approved, would seemingly read the uniformity clause out of the Arizona Constitution.

*Id.* at 533, 880 P.2d at 1079.

■ The county reads *America West* to hold that a classification of property is acceptable only if it is based upon the property's "use, utility, or productivity." Although we recognize that the *America West* court used this phrase in its opinion, *see id.* at 535, 880 P.2d at 1081, we disagree that it has become the sole standard for valid property tax classification.

Rather, the court also stated that a valid property tax classification is based on "differences in the *property* or *its* use," *id.* at 533, 880 P.2d at 1079 (emphasis added), or on "one of the property's *characteristics* or *uses*," *id.* at 532, 880 P.2d at 1078 (emphasis added). The court then explained:

> [W]e merely follow our line of cases from the early days of statehood, that classifications for taxation purposes must be real, not fanciful, and based on the *nature of the property* or *on some other real difference in its use, utility or productivity.*

*Id.* at 535, 880 P.2d at 1081 (emphasis added). Thus, we conclude that, pursuant to *America West*, a valid classification for ad valorem property taxation may be based upon the *nature of the property*, and not just its use, utility or productivity.

The county also reads *America West* as requiring that property tax classifications be based upon only the *physical* characteristics of the property rather than its *legal* characteristics, such as the type and extent of its ownership. We disagree.

In view of the precedent that the court relied upon in *America West*, we see no reason to conclude that the court's single reference to the aircrafts' "physical characteristics," *see id.* at 535, 880 P.2d at 1081, was intended to preclude its "nature of the property" test, *id.* For example, the court in *America West* reaffirmed that classifications based on the use to which identical property is put, or the industry in which it is used, were permissible under the Uniformity Clause. *See, e.g., Department of Revenue v.*

*Trico Elec. Coop.,* 151 Ariz. 544, 548–49, 729 P.2d 898, 902–03 (1986) (different classifications for property owned by electric and gas utilities and identical property owned by gas and water pipeline utilities); *Apache County v. Atchison, Topeka & Santa Fe Ry. Co.,* 106 Ariz. 356, 360, 476 P.2d 657, 661 (1970) (property of railroad company may be classified differently from identical property in another industry). The court in *America West* specifically noted that, in *Apache* and *Trico,* the basis for recognizing a separate class was the difference in the *nature* of the industries. 179 Ariz. at 532, 880 P.2d at 1078. Since neither the way property is used nor the industry in which its owner operates relates to the property's physical characteristics, we conclude that *America West* does not stand for the proposition that the property's physical characteristics constitute the only permissible criteria for classification.

### 2. *Separate Classification for Possessory Interests*

As discussed earlier, a possessory interest is a taxpayer's non-freehold possession of property owned or held by the government. A.R.S. § 42–681(4). In practice, it generally takes the form of a lease of government-owned property, as in the instant cases. The county contends that there are two reasons why classifying property based upon whether it is held as a possessory interest violates the Uniformity Clause: first, it is unconstitutional to classify property in the same industry used for the same purpose based merely upon whether the taxpayer holds it pursuant to a lease or in fee; and second, it is unconstitutional to classify leasehold interests based merely upon whether they are on private or public property. We disagree with both arguments.

■ DOR concedes that one effect of the possessory interest tax scheme was to classify leasehold interests based upon whether they were located upon private or public property. If on private property, the leasehold would not be subject to ad valorem property taxation; but if on public property it would be a possessory interest subject to ad valorem property taxation. We conclude that this was a valid classification.

Leaseholds on private property are not subject to ad valorem property taxation because the property on which it is located is already subject to such taxation, albeit to the owner/lessor rather than the lessee. By contrast, possessory interests are located on property that is not otherwise subject to ad valorem property taxation because it is owned by a governmental entity. *See* Ariz. Const. art. IX, § 2 ("There shall be exempt from taxation all federal, State, county and municipal property."). This constitutes a fundamental difference in the nature of the property: the fee ownership in one is capable of being taxed while the other is not. The classification at issue was therefore based upon the inherent nature of the property (private and taxable versus public and nontaxable) and therefore, pursuant to *America West,* did not violate the Uniformity Clause. *See* 179 Ariz. at 535, 880 P.2d at 1081 (Classifications "must be . . . based on the nature of the property or on some other real difference in its use, utility or productivity.").

■ DOR again concedes that another effect of the possessory interest tax was to classify identically-used property in the same industry on the basis of whether that property was held in fee or by a lesser interest, such as a lease. We again conclude that this was a valid classification.

The form of ownership interest in property may be a critical element of the nature of that property. A fee simple interest is qualitatively very different from a possessory right. Fee simple ownership allows the unlimited use of the property subject only to statutory and common law restraints. A possessory interest, on the other hand, is generally limited in its use, utility and productivity, and, as in the instant cases, may not be freely alienable. We therefore conclude that this distinction was a valid basis for differing ad valorem property tax treatment.

We reach these conclusions because we disagree with the county's attempt to apply a strict, literal reading of *America West.* In *America West,* the court simply did not consider the unique circumstances, discussed above, that possessory interests present for

ad valorem property taxation. Unlike the tangible property at issue in *America West*, we are concerned here with the taxation of intangible interests in government property, the only taxable layer of which is the possessory interest because the government owner cannot be taxed. As such, the classification of such property must be based, at least in part, upon legal, nonphysical characteristics. To the extent that some of *America West*'s broad language might appear to question the validity of such classification methods, we conclude that it is *dicta* because the court had no reason to consider the taxation of property so fundamentally different from the tangible airplanes at issue there.

### 3. *Classifications Between Possessory Interests*

The county also argues that the possessory interest taxation scheme violated the Uniformity Clause because it provided for separate classification, based upon use, for some possessory interests, but not all. The county thus appears to argue that a property tax classification cannot be defined by more than one limiting criterion. The county, however, cites no authority for this proposition and we are aware of none. Such a limitation would be impracticable and defy common sense.

As discussed above, property tax classification may be based upon the property's nature, use, utility, or productivity. *America West*, 179 Ariz. at 535, 880 P.2d at 1081. If property may be classified according to its nature *or* its use, it must also be permissible to classify it according to its nature *and* its use. Thus, having determined that separate classification for possessory interests is permissible, we further conclude that providing separate tax treatment for only those possessory interests that qualify under certain specified uses is also permissible.

Accordingly, we conclude that A.R.S. section 42–162(A)(12) and (13) did not violate the Uniformity Clause.

### D. Special Legislation

The county also maintains that A.R.S. section 42–162(A)(12) and (13) violated the prohibition of Ariz. Const. art. IV, pt. 2,

§ 19 against certain special laws. Citing *Tucson Elec. Power Co. v. Apache County*, 185 Ariz. 5, 912 P.2d 9 (Ariz.App.1995), it asks us to exercise our discretion to consider this argument despite its failure to preserve it for appellate review. Although we ordinarily will not consider an issue raised for the first time on appeal, we will address this issue in the instant case because it is of constitutional dimension and statewide importance, and has been fully briefed by the parties. *See id.* at 12, 912 P.2d at 16. We conclude that the statutes at issue did not constitute special legislation.

To qualify as a general law, as opposed to a special law, a statute must meet three criteria: 1) the classification must have a rational basis; 2) the statute must encompass all members of the relevant class; and 3) the statutory class must be elastic, i.e., allow members to move into or out of it as circumstances change. *Id.* at 13, 912 P.2d at 17.

The county first argues that there was no rational basis for the compositions of classes 12 and 13. But these classifications clearly had a rational basis in that the resulting lower taxes on the property would foster development in the industries specified. *See Arizona Downs v. Arizona Horsemen's Found.*, 130 Ariz. 550, 558, 637 P.2d 1053, 1061 (1981) (statute that gave preference for horse racing permit to past permittees was rationally related to encouraging investment into horse racing business by assuring continuity and predictability of events).

The county next argues that the second criteria for a general law is not satisfied because not all possessory interests are included within classes 12 and 13, which causes those statutes to exclude certain members of the relevant class. However, since the classification of possessory interests by use was permissible, the relevant classes involved were those subclassifications contained within classes 12 and 13. All possessory interests devoted to the specified uses were thus included in the relevant class.

Finally, the county argues that the class was not elastic because improvements could not move from privately owned land to pub-

licly owned land to qualify for the lower possessory interest tax. While this is true, it does not mean that the class was inelastic. As tax circumstances change, taxpayers may enter into leases on public land, or change the nature of the use to which they put their possessory interest, in order to qualify for the specialized tax treatment in class 12 or 13. *Cf. Tucson Elec.,* 185 Ariz. at 16, 912 P.2d at 20 (finding that special tax imposed solely on mining and utility property in school districts to be inelastic because "utilities and mines generally do not move easily in and out of school districts as tax circumstances change"). Accordingly, we conclude that A.R.S. section 42–162(A)(12) and (13) were not special legislation in violation of Ariz. Const. art. IV, pt. 2, § 19(9).

### E. The No–Exemption Clause

■ Ariz. Const. art. IX, § 2(6) provides: "All property in the State not exempt under the laws of the United States or under this Constitution or exempt by law under the provisions of this section shall be subject to taxation to be ascertained as provided by law." The county argues that, because none of the exemptions in Ariz. Const. art. IX, § 2 applied to the class 12 property at issue here, class 12 constituted an unconstitutional exemption.

This argument fails, however, because class 12 did not create an exemption from taxation. Class 12 property was subject to taxation on 1% of its value. While this assessment rate was significantly lower than the 25% assessment rate for class three property, it nevertheless imposed a tax on the property. Thus, rather than exempting certain property from taxation, class 12 merely provided a different assessment rate for such property. *See Scottsdale Princess Partnership v. Maricopa County,* 185 Ariz. 368, 375, 916 P.2d 1084, 1091 (App.1995) (concluding that former A.R.S. section 42–685 did not create an exemption but "simply provide[d] for a different tax valuation rule to be applied [to possessory interests] in redevelopment areas"). We therefore reject this argument.

### F. Contracting Away the Power to Tax

■ Ariz. Const. art. IX, § 1 provides that "[t]he power of taxation shall never be surrendered, suspended, or contracted away." The county contends the Arizona possessory interest taxation scheme in effect in 1993 and 1994 violated this prohibition. It reasons that, in light of the tax benefits that would inure to a private tenant pursuant to former A.R.S. sections 42–162(A)(12), (13), –683, –684, or –685, a public entity could extract, and the private tenant might willingly pay, a rent for the public entity's real property that was higher than market rent. The county argues that the excess over the market rent would otherwise have been distributed among the state, county, and local taxing districts in the form of higher property taxes. The county concludes that the challenged statutes thereby surrendered or contracted away the power to tax.

We disagree. The purpose of the first sentence of Ariz. Const. art. IX, § 1 is to prevent state government from delegating to other bodies the power to impose taxes, from irrevocably granting tax immunity, or from relinquishing by regulation the collection of a tax that the legislature requires be imposed. *See Climate Control, Inc. v. Hill,* 86 Ariz. 180, 191, 342 P.2d 854, 861 (1959), *mod. on reh.,* 87 Ariz. 201, 349 P.2d 771 (1960); *Switzer v. City of Phoenix,* 86 Ariz. 121, 127, 341 P.2d 427, 431 (1959). We are aware of no authority for the proposition that the legislature surrenders or contracts away the power to tax if it enacts otherwise constitutional tax benefits from which public entities may indirectly benefit through contracts with affected taxpayers.

*Switzer* demonstrates that the county's interpretation would stretch the first sentence of Ariz. Const. art. IX, § 1 far beyond its intended scope. *Switzer* involved a challenge to a city bond issue for which the authorizing ordinance pledged to bondholders that, while the bonds remained outstanding, the proportion of State Motor Vehicle Fuel Taxes payable to the city would not be decreased. Although the supreme court held that this provision was beyond the city's legislative powers, it also concluded that the provision did not amount to an unconstitutional surren-

der of the power to tax. The court held that the first sentence of Ariz. Const. art. IX, § 1

> was adopted for the purpose of restricting the legislature's right to alienate the power to tax anything and all persons. The prohibition is against the irrepealable grant of immunity from taxation. It was not intended to prohibit the levying of a tax.
>
> . . . .
>
> ... [W]e are of the opinion that the first sentence of Art. IX, § 1 is a prohibition against the surrender or relinquishment of the right to impose a tax. In the instant case, "it is crystal clear" that the legislature is not contracting away the right to impose a tax. The legislature has imposed a tax and has simply applied the proceeds of the tax to a particular purpose.

86 Ariz. at 127–28, 341 P.2d at 431.

Similarly, the legislature did not surrender or relinquish any power to tax by imposing the possessory interest taxation scheme challenged here since no subject lease agreement could have irrevocably committed the legislature to maintain that form of taxation.

### G.   Attorneys' Fees

Cutter and Southwest each request awards of attorneys' fees on appeal pursuant to A.R.S. section 12–348(B), and we grant the requests. Each appellant may establish the amount of its award by complying with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

### V.   CONCLUSION

The judgments in Cutter's and Southwest's cases are reversed and remanded with directions to enter judgment granting the relief requested.

TOCI, V.C.J., and GARBARINO, P.J., concur.